UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re:

THE GREAT ATLANTIC & PACIFIC TEA   **OPINION AND ORDER**
COMPANY, INC., *et al.*,

       Reorganized Debtors.
------------------------------------------------------------------------x
HUDSON ENERGY SERVICES, LLC,

       Appellant,

              15-CV-416 (CS)

  - against -

THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC., *et al.*,

       Appellees.
------------------------------------------------------------------------x

Appearances:

Jeremy B. Reckmeyer
Andrews Kurth LLP
New York, New York

David A. Zdunkewicz
Andrews Kurth LLP
Houston, Texas
*Counsel for Appellant*

Andrew M. Genser
Nathaniel J. Kritzer
Kirkland & Ellis LLP
New York, New York
*Counsel for Reorganized Debtors-Appellees*

Seibel, J.

Before the Court is the appeal of Hudson Energy Services, LLC ("Hudson") from the Bankruptcy Court's November 6, 2014 bench ruling and November 10, 2014 Order denying its request for administrative priority pursuant to 11 U.S.C. § 503(b)(9). (Bankr. Docs. 4584, 4589.)[1]

For the reasons that follow, the Bankruptcy Court's Order is AFFIRMED.

## I. BACKGROUND

*A. Proceedings Below*

On April 27, 2012, Hudson filed a Motion for Allowance of Administrative Claim pursuant to 11 U.S.C. § 503(b)(9),[2] seeking administrative priority for $875,943.90 in electricity sold to the Great Atlantic & Pacific Tea Company, Inc. and its affiliates, (collectively, the "Reorganized Debtors"), in the twenty days before the petition date. (Bankr. Doc. 3728; *id.* Ex. A.) The Reorganized Debtors objected to Hudson's Motion on the basis that electricity did not qualify as "goods" under Section 503(b)(9). (*See* Bankr. Doc. 3932.) On August 24, 2012, the Bankruptcy Court heard oral argument on Hudson's Motion, (*see* Bankr. Doc. 3999), and denied the claim from the bench, (*see* Bankr. Docs. 3952, 4017). In denying Hudson's Motion, the Bankruptcy Court concluded that electricity did not "clearly fall" within the definition of "goods" in Section 503(b)(9), (*see* Bankr. Doc. 4017 at 10), relying in part on the principle that administrative expense claims "must be tightly construed," (*id.* at 4 (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006)), and "clearly fit within the statute's

---

[1] "Bankr. Doc." refers to documents filed in the U.S. Bankruptcy Court for the Southern District of New York under docket number 10-BK-24549.

[2] 11 U.S.C. § 503(b)(9) provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . [for] the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business."

2

provisions" before being accorded priority treatment, (*id.* at 10).  Hudson appealed, and this Court vacated the Bankruptcy Court's order and remanded for further fact-finding.  *See In re Great Atl. & Pac. Tea Co., Inc.*, 498 B.R. 19, 29-31 (S.D.N.Y. 2013) (hereinafter "*A&P I*").  I ruled that "whether Hudson's assertions about the nature of electricity will ultimately be borne out by the evidence must be determined through an evidentiary hearing," *id.* at 31, because "[t]he record below [did] not allow me to" reach a conclusion one way or the other, *id.* at 29-30.  Familiarity with that decision and with all prior proceedings is presumed.

On remand, the Bankruptcy Court entered a discovery scheduling order, (Bankr. Doc. 4549), and conducted an evidentiary hearing on November 6, 2014, (Bankr. Doc. 4589).  After hearing expert testimony from both sides, the Bankruptcy Court, ruling from the bench, again denied Hudson's claim.  (BR at 126.)[3]  As it had originally, and as I agreed should be done, *A&P I*, 498 B.R. at 25, the Bankruptcy Court looked to the definition of goods found in UCC Section 2-105(1), which defines "goods" as "all things . . . which are movable at the time of identification to the contract for sale," UCC § 2-105(1).  The Bankruptcy Court found that while "the electricity is identified through a meter reading when it is delivered to [the Reorganized Debtors,] [t]he reading itself cannot be made until after [the Reorganized Debtors] use[] the electricity" because of the speed at which electricity travels.  (BR at 123.)  In other words, although "the event giving rise to its identifiability occurs before [the Reorganized Debtors] receive[] the electricity," the electricity "is identified only [after] [the Reorganized Debtors] use[] the electricity because the meter does not reflect or register the electricity until after th[e] fact."  (*Id.*)  The Bankruptcy Court concluded that the electricity was not "moveable" at the time it was identified to the contract because at the time it was identified – *i.e.*, when the meter

---

[3] "BR" refers to the transcript of the November 6, 2014 evidentiary hearing, (Bankr. Doc. 4589).

3

registered it – it had already been used by the Reorganized Debtors.  (*Id.* at 123-24.)  As a further basis for finding that electricity did not fit the UCC definition of goods, the Bankruptcy Court held that the time between identification and consumption of a good must be "meaningful," and that any such time here could not be, because the flow through the meter, the consumption and the registration of the measurement all happened at "the speed of light, *i.e.*, instantaneously for purposes of human registration."  (BR at 124 (citing *In re NE Opco, Inc.*, 501 B.R. 233, 250 (Bankr. D. Del. 2013).)  In the alternative, and as it held in its prior ruling, the Bankruptcy Court found that given the "metaphysical" and "ultimately unresolvable nature of this dispute," the principle that administrative priority claims should be narrowly construed dictated that Hudson's claim should be denied.  (BR at 125-26 (citing *Howard*, 547 U.S. 651).)[4]

On January 20, 2015, Hudson filed a timely Notice of Appeal.  (Doc. 1.)  On appeal, Hudson argues that the Bankruptcy Court erred in (1) ignoring what Hudson characterizes as this Court's direction to apply the analytic framework of *In re Erving Indus., Inc.*, 432 B.R. 354 (Bankr. D. Mass. 2010), and instead relying on *Opco*, 501 B.R. at 250; (2) finding that electricity is not moving as it passes through the meter; (3) finding that electricity is not identified at the moment it passes through the meter; and (4) relying on the principle of narrow construction.  (*See* Hudson Mem. 6-16.)[5]

## II. DISCUSSION

### A. Legal Standard

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  A district court reviews a bankruptcy

---

[4] The Bankruptcy Court also held that electricity is not an "undivided share in an unidentified bulk of fungible goods" under UCC Section 2-105(4).  (BR at 122.)  Hudson does not challenge that ruling on appeal.

[5] "Hudson Mem." refers to the Brief of Appellant Hudson Energy Services, LLC, (Doc. 6).

court's findings of fact for clear error and reviews its legal conclusions *de novo*. *Overbaugh v. Household Bank N.A.* (*In re Overbaugh*), 559 F.3d 125, 129 (2d Cir. 2009) (*per curiam*); *see* Fed. R. Bankr. P. 8013 (district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). "Mixed questions of fact and law are subject to *de novo* review." *Babitt v. Vebeliunas* (*In re Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003); *see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.* (*In re Parmalat*), 639 F.3d 572, 580 (2d Cir. 2011).

A Bankruptcy Court's determination that a payment is or is not a proper administrative expense presents a question of law. *In re Bethlehem Steel Corp.*, 479 F.3d 167, 172 (2d Cir. 2007). Thus, the question of whether electricity is a good under Section 503(b)(9) is a question of law. *See GFI Wisconsin, Inc. v. Reedsburg Util. Comm'n (In re Grede Foundries)*, 440 B.R. 791, 797 (W.D. Wis. 2010). Subsidiary questions, such as whether electricity is moving at the time it is metered, are questions of fact. *See Id.*

  B. *The Scope of the Remand*

Hudson's first argument is premised on the interpretation that in my prior order, I adopted the reasoning of *In re Erving*, 432 B.R. at 369-71, and established a test for whether electricity was a good that the Bankruptcy Court was bound to follow. (*See* Hudson Mem. 3-4, 6-9, 12, 14-15.) In the prior order, in explaining why an evidentiary hearing was necessary, I stated

> [I]f – as Hudson argues and as the *Erving* case held – electricity passes through the meter at the customer's location and is at that moment identified and thereafter consumed, it seems to me that it would meet the UCC's definition of a good, for the reasons set forth by the *Erving* Court. The record below does not allow me to conclude that electricity works that way, but it also does not allow

5

>  me to conclude that it does not.  Thus, further factual development
>  is necessary.

*A&P I*, 498 B.R. at 29-30 (citations omitted).  As indicated by the words "it seems to me," this was an expression of my preliminary views, rather than a definitive ruling.  The prior order is clear that the only thing decided and the only direction to the Bankruptcy Court was that further factual development was necessary.  *See id.* at 29-31.  But even if Hudson's view of the prior order were correct, the Bankruptcy Court has not violated it.  The Bankruptcy Court found that Hudson's electricity was not identified to the contract at the moment it passed through the meter.  (*See* BR at 123.)  The *Erving* Court, by contrast, found that electricity *was* identified at the moment it passed through the meter, after which it "continue[d] to move through the customer's electrical wiring until it [was] ultimately put to use."  *Erving*, 432 B.R. at 370.  *Erving* is thus factually distinguishable.  Hudson's real quarrel, then, is with the Bankruptcy Court's finding that electricity is not identified at the moment it passes through the meter, to which I now turn.

   C.  *The Bankruptcy Court's Factual Findings*

      Hudson argues that the Bankruptcy Court erred in finding that electricity: 1) is not moving as it passes through the meter, (*see* Hudson Mem. 9-14); and 2) is not identified the instant it passes through the meter, (*see id.* 14-15).  The Bankruptcy Court's factual determinations are reviewed for clear error.  *See Overbaugh*, 559 F.3d at 129.  "When reviewing for clear error, [the court] may reverse only if [it is] left with the definite and firm conviction that a mistake has been committed."  *United States v. Bershchansky*, 788 F.3d 102, 110 (2d Cir. 2015) (internal quotation marks and citation omitted).  "'[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'"  *Id.* (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)).

6

As to Hudson's first point, the Bankruptcy Court did not find that electricity was not moving at the time it passed through the meter, (*see* BR at 123 (electricity "hits the meter before A&P uses the electricity")), and the Reorganized Debtors did not contest that point at the evidentiary hearing, (*see id.* at 111 ("We all agree electricity is moving.")). Instead, the Bankruptcy Court found that the electricity had ceased moving and become unmovable by the time the meter registered its passage because it had, at that point, been consumed. (*See id.* at 105 ("[T]he time by which it's registered is after it's already been used .").) The Bankruptcy Court did note that when electricity passes through the meter it "move[s] but is not movable beyond the circuit that it is on," (*id.* at 123-24), but I do not read that statement as necessary to the Bankruptcy Court's holding, and it is not necessary to this Court's decision.[6]

Hudson next argues that the Bankruptcy Court erred in ruling that electricity is not identified before it is consumed. The parties have not addressed whether this is a question of law or fact. In my view, the question has two parts: first, the factual question of whether electricity is metered before or after consumption, and, second, the question of when electricity is identified to the contract under the UCC. This second question is likely a mixed question of law and fact, because it "'involve[s] the application of a legal standard to a particular set of facts.'" *Ling Nan Zheng v. Liberty Apparel Co. Inc.*, 617 F.3d 182, 185 (2d Cir. 2010) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999)). The result, however, would be the same under clear error or *de novo* review.

As to the first question, I find no clear error. The record shows decisively that because electricity travels at speeds approaching the speed of light, and because of the limitations of metering technology, a meter – the device that measures the amount of electricity used by the

---

[6] There is an evidentiary basis for the Bankruptcy Court's finding that electricity cannot be moved beyond the circuit that draws it from the grid, as Hudson's expert testified to that effect, (BR at 41), but I do not necessarily agree that, and need not reach the issue whether, moving only within one circuit makes something not "movable."

7

Reorganized Debtors' stores – cannot record the amount of electricity passing through it before the electricity is consumed by the device at the end of the electrical circuit.  Hudson's expert, Willard Kresge, stated in his declaration to the Bankruptcy Court that "the customer's meter may take milliseconds to actually record the electricity consumed by the customer's electrical devices (which likely is after the time that the electricity is used)."  (Bankr. Doc. 4576 ¶ 27.)  At the evidentiary hearing, Mr. Kresge testified that it would take approximately 226 nanoseconds for electricity to travel from the meter to the end device where it is consumed (based on an assumed distance of two hundred feet), and that he was "not aware of any situation in which a meter could measure electricity within 226 nanoseconds."  (BR at 35, 36.)  He also testified that at the moment electricity passes through the meter, the meter shows zero, and that the meter will not register or show that electricity has passed through it until at least a millisecond after the electricity has been used by the end device.  (*Id.* at 57-58.)  The Reorganized Debtors' Expert, Howard Scott, wrote in his report that "by the time the meter can actually *identify* the electricity that passes through it, the electricity has already reached its end-point and been consumed."  (Bankr. Doc. 4566 Ex. 1 at 5.)  Accordingly, the Bankruptcy Court did not commit clear error in finding that electricity is metered, or measured, after it is consumed.  I will now turn to the second question.

      As noted above, the UCC provides the definition of "goods" for the purpose of interpreting Section 503(b)(9).  *A&P I*, 498 B.R. at 25.  Under the UCC, goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale."  U.C.C. § 2-105(1).  "'Identification of goods occurs when existing goods are designated, or agreed upon, as the goods to which the contract refers.'"  *Erving*, 432 B.R. at 370 (quoting 2 Anderson U.C.C. § 2–501:4, at 734 (3d ed. 2004)).

Given the Bankruptcy Court's factual findings and the record below, I find that the electricity supplied by Hudson is identified for contractual purposes at the moment the meter records or displays the amount used, rather than at the moment electricity passes through the meter. Hudson's fact witness, James Brown, testified that Hudson uses meter readings to bill its clients, and that without a meter reading Hudson would not know how much electricity it provided to the Reorganized Debtors. (BR at 12-13.) Hudson's expert, Mr. Kresge, testified that a person cannot know how much electricity has passed through the meter unless the meter measures the electricity and displays it. (*Id.* at 37.) He also testified, as already noted, that at the moment the electricity passes through the meter, the meter reads "zero." (*Id.* at 57.) Accordingly, I agree with the Bankruptcy Court that electricity is identified not when it passes through the meter, but when it is measured and that measurement is registered and displayed by the meter. (*See id.* at 103 ("[The *Erving* Court] just assumes [that "passing through the meter"] means it's identified to the contract. And it really isn't.").)[7] I also agree with the Bankruptcy Court that in some sense the amount of electricity that will ultimately be billed is determinable at the moment the electricity passes through the meter. (*Id.* at 123 (calling this "the event giving rise to [electricity's] identifiability").) But it is not until after that moment that the amount becomes known (or even knowable). At the moment the electricity passes through the meter, the amount of electricity known by the contracting parties to have been used is zero. Accordingly, I find that the electricity supplied by Hudson was identified to the contract at the moment it was registered by the meter, rather than at the moment the electricity passed through the meter.

---

[7] There was testimony to the contrary, (*see* BR at 53 ("Identifying is when the electricity is – actually goes through the meter before it is actually registered or recorded.")), but I do not find it persuasive, particularly because the witness, Mr. Kresge, is an engineer with no expertise regarding the mixed question of law and fact presented by UCC § 503(b)(9). Even if, as Mr. Kresge testified, all of the steps necessary to subsequently measure the amount of electricity have occurred when the electricity passes through the meter, (BR at 54), the fact remains that that measurement has not yet occurred, and it cannot be that an unmeasured amount of electricity is "identified to the contract."

9

### D. Whether Electricity is a Good Under Section 503(b)(9)

Hudson has not argued that under the Bankruptcy Court's view of the facts – that electricity passes through the meter, is used by an end device, and is thereafter metered and identified – electricity is a good under Section 503(b)(9). I will note, however, that I agree with the Bankruptcy Court that under those facts it does not so qualify. Under the UCC definition, the electricity here is not movable at the time of identification because it has already been used. *See In re Pilgrim's Pride Corp.*, 421 B.R. 231, 239 & n.8 (Bankr. N.D. Tex. 2009) (electricity not a good because "[o]nce [it] has been 'identified' by measurement at the meter, it has already been consumed by the end user").

Hudson does argue that the Bankruptcy Court was wrong to adopt the reasoning of *Opco*, 501 B.R. at 251, to the effect that the speed at which electricity moves from the meter to consumption renders its time as a movable thing meaningless, (*see* BR at 124). This reasoning, right or wrong, is inapposite because it assumes some lapse of time between identification and consumption. *See Opco*, 501 B.R. at 251 ("A difference of approximately 1/60th of 1/60th of 1/60th of a second between identification and consumption renders the separation between the two meaningless.") (footnote omitted). The Bankruptcy Court found, however, and I agree, that identification occurs after consumption, not – as *Opco* presumed – when the electricity passes through the meter, (*see* BR at 105, 123). Whether the Bankruptcy Court thought the meaningfulness argument was central to its ruling or an alternative basis is unclear, but in either event I find it unnecessary to resolution of this appeal and do not take up the issue.

### E. Narrow Construction

Hudson also argues that the Bankruptcy Court erred in relying on the principle of narrow construction to deny its claim. Although it is unnecessary to resolve the issue given the

foregoing, I noted in my prior ruling that I had no quarrel with application of the principle, and I find no error now.  In *Howard Delivery Services*, the Supreme Court stated that the Bankruptcy Code's "provisions allowing preferences must be tightly construed" in order to effectuate the "equal distribution objective underlying" the Code.  547 U.S. at 667.  Thus where it is "far from clear" that a claim falls within the Bankruptcy Code's priority provisions, courts should "reject [an] expanded interpretation . . . [u]nless and until Congress otherwise directs." *Id.* at 668.  The Bankruptcy Court held that given the metaphysical, hair-splitting nature of the dispute here – the difference of nanoseconds, the mystery of the physical nature of energy – a more definitive statement was needed from Congress, and that the principle of narrow construction cautioned against granting Hudson's priority claim.  (*See* BR at 125-26.)

    I agree with the Bankruptcy Court that it is "far from clear" that electricity falls within the meaning of goods under Section 503(b)(9).  *See Howard*, 547 U.S. at 668.[8]  The divergent judicial opinions on the issue, *compare In re Pilgrim's Pride Corp.*, 421 B.R. at 239 & n.8 (electricity not a good because "[o]nce [it] has been 'identified' by measurement at the meter, it has already been consumed by the end user;" "[i]t [would be] impossible for the consumer to return electricity to the provider after it has passed the meter point;" and "[i]t is difficult to imagine how electricity to be delivered could be identified at all before transmission to the customer"); *In re Samaritan Alliance, LLC*, No. 07-BK-50735, 2008 WL 2520107, at *4 (Bankr. E.D. Ky. June 20, 2008) (electricity not a good because "electricity provided is more properly characterized as a 'service'"), *with In re Grede Foundries*, 440 B.R. at 799-801 (affirming bankruptcy court holding that electricity a good because "an electric current is literally moving through the transmission network and continues to move until it is delivered to a customer *at the*

---

[8] If anything, as I have found on the record here, it is clear that it does not fall within the ambit of the statute.

11

*time* it is metered and consumed;" "metering satisfies the identification requirement of the UCC and the movement is sufficient to satisfy the movability requirement, even if it reaches the speed of light;" and "there is no principled distinction to be made" between electricity and natural gas or water, which are considered goods under the UCC definition) (emphasis in original) (internal quotation marks omitted); *In re S. Mont. Elec. Generation & Transmission Coop., Inc.*, No. 11-BK-62031, 2013 WL 85162, at *4-5 (Bankr. D. Mont. Jan. 8, 2013) (electricity a good for reasons stated in *In re Grede Foundries*); *In re Erving Indus.*, 432 B.R. at 370 (electricity a good because "[it] does not simply reach a customer's meter and simultaneously cease to exist" but rather "*passes through* the meter" so that "it is literally moving [at the time it is identified to the contract], *and* it remains movable for some period of time . . . through the customer's electrical wiring until it is ultimately put to use") (emphasis in original), and the confounding questions of physical science at the heart of the dispute indicate that the question of whether electricity is a good is not clearly answered in the affirmative. Accordingly, I affirm the Bankruptcy Court on this alternate ground.

### III.  CONCLUSION

For the reasons stated above, the Order of the Bankruptcy Court is AFFIRMED. The Clerk of the Court is respectfully directed to docket this decision and close the case.

**SO ORDERED.**

Dated:  September 18, 2015
        White Plains, New York

*[signature: Cathy Seibel]*
_____
CATHY SEIBEL, U.S.D.J.